**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Richard R. Wescott


        v.                                    Civil No. 09-cv-334-JD


Richard Gerry, Warden,
New Hampshire State Prison, et al.


## <u>REPORT AND RECOMMENDATION</u>


        Before the Court is Richard Wescott's petition for a writ of
habeas corpus (document no. 1), filed pursuant to 28 U.S.C. §
2254.  The matter is before me for preliminary review to
determine whether or not the claims raised in the petition are
facially valid and may proceed.  <u>See</u> Rule 4 of the Rules
Governing Section 2254 cases in the United States District Courts
("§ 2254 Rules").

        Also before the court is Wescott's "Motion for Change of
Venue" (document no. 2).  In that motion, Wescott claims that
this Court is unable to fairly consider his claims because, in
the past, similar claims have been decided against Wescott's
position.  Wescott asserts that this Court will fail to consider
his arguments on their own merits, due to an alleged desire to
avoid conflict with prior decisions.  While there are many

reasons to change venue in the appropriate case, a likelihood
that this Court will adhere to legal precedent in deciding this
matter, contrary to the position of the plaintiff, is not one of
them.  I recommend that the motion be denied.

### Standard of Review

Under this Court's local rules, when an incarcerated person
commences an action pro se and in forma pauperis, the Magistrate
Judge conducts a preliminary review.  LR 4.3(d)(2).  In
conducting the preliminary review, the Court construes all of the
factual assertions in the pro se pleadings liberally, however
inartfully pleaded.  See Erickson v. Pardus, 551 U.S. 89, 94
(2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97,
106 (1976), to construe pro se pleadings liberally in favor of
the pro se party).  This review ensures that pro se pleadings are
given fair and meaningful consideration.

The court conducting preliminary review must accept as true
any inferences reasonably drawn from the plaintiff's factual
assertions.  See Centro Medico del Turabo, Inc. v. Feliciano de
Melecio, 406 F.3d 1, 5-6 (1st Cir. 2005).  The Court is not
bound, however, to credit legal conclusions, labels,
unsupportable conclusions, and naked assertions.  See Ashcroft v.

2

Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009); Centro
Medico, 406 F.3d at 5-6; Aulson v. Blanchard, 83 F.3d 1, 3 (1st
Cir. 1996)).  "The policy behind affording pro se plaintiffs
liberal interpretation is that if they present sufficient facts,
the court may intuit the correct cause of action, even if it was
imperfectly pled."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st
Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381
(2003) (courts may construe pro se pleadings to avoid
inappropriately stringent rules and unnecessary dismissals).

     If the Court's construction of the facts, both asserted and
implied, constitute well-pleaded factual allegations, a court
should accept those allegations as true, and then determine
whether the allegations "plausibly give rise to an entitlement to
relief."  Iqbal, 129 S. Ct. at 1950.  "[W]here the well-pleaded
facts do not permit the court to infer more than the mere
possibility of misconduct, the complaint has alleged – but it has
not shown – that the pleader is entitled to relief."  Id.
(internal quotations omitted).  In making the determination of
plausibility, the court will examine whether the allegations, as
construed, have "'nudged'" the claims "'across the line from

3

conceivable to plausible.'"  <u>Id.</u> at 1951 (quoting <u>Bell Atl. Corp.</u>
<u>v. Twombly</u>, 550 U.S. 544, 570 (2007).

<u>Background</u>

In 1998, Richard Wescott pleaded guilty to multiple counts
of aggravated felonious sexual assault.  Wescott has been
incarcerated for those offenses since June 10, 1998.

During his incarceration, Wescott created a website as part
of a Master's Degree program in which he was enrolled.[1]  Wescott
describes his website, <u>www.comingoutofthedark.org,</u> as Christian-
themed writing intended to prevent or diminish interpersonal
violence by providing a resource to assist people in finding
alternatives to committing or being victimized by acts of such
violence.  The website contained an invitation for readers to
contact Wescott, via email, with questions or concerns about
anything contained in the website.  The website was online for a
short time in 2007.  Wescott states that although the website was
accessible to the public during that time, he did nothing to
direct traffic to the site.

---

[1]Wescott does not have access to the internet while he is
incarcerated.  Wescott's creation of the website consisted of his
authoring the content of the site, and forwarding that content to
outside contacts to put that content onto the site.

According to Wescott, his minimum parole eligibility date
was June 10, 2008.  A parole hearing to determine Wescott's
parole eligibility was held on May 8, 2008.  At the hearing,
Wescott claims that immediately upon entering the hearing room,
he was advised by the Adult Parole Board ("APB") Chairman, George
Khoury, that he was not going to be granted parole at that time
because the APB had concerns about the content of his former
website.  Khoury advised Wescott that the APB would seek and
consider the input of the prison's sexual offender treatment
program director, Kim Marsh, prior to rendering a final parole
decision.  Wescott received paperwork indicating his parole was
denied after his May 8, 2008 hearing, but that a rehearing on his
suitability for parole would be held upon the APB's review of
Marsh's opinion of the content of Wescott's website.

Wescott filed a motion to reconsider the parole board's May
8, 2008 denial of parole.  The motion was denied as premature, as
the Board had already agreed to reconsider its decision.  Wescott
filed an administrative grievance with New Hampshire DOC
officials, complaining about the denial of his parole.  The DOC
officials refused to intervene in the APB's actions.

Wescott also filed an action in state court, seeking to enjoin the APB from further denying him release on parole.  While the state court action was pending, Wescott's rehearing was scheduled for October 23, 2008.  Wescott requested a continuance of the parole rehearing until after the state court rendered a decision.  Wescott's request accused the APB of only moving forward with the rehearing under threat of a possible injunction. Wescott advised the APB that he would not attend the rehearing, as he felt that it was convened in violation of his rights.  It appears that the rehearing was cancelled due to Wescott's asserted refusal to attend.[2]

Wescott now asserts that:[3]

1.   His parole was improperly denied because the APB failed to follow its own regulations and procedures, and thereby acted without legal authority in refusing to grant Wescott parole; and

_____

[2]The record before me does not exclude the possibility that the rehearing was held in Wescott's absence, or that the hearing was held on October 23, 2008, or was rescheduled, and Wescott failed to attend, and that parole was then denied again after the rehearing.  In any case, Wescott has not been granted parole and remains incarcerated.

[3]The claims as identified herein will be considered to be the claims raised in this action for all purposes.  If Wescott disagrees with the claims as identified, he must do so by properly filing an objection to this Report and Recommendation or a motion to amend his petition.

2.   His parole was improperly denied in response to Wescott's assertion of his First Amendment rights to free speech and to freely exercise his religion.

Discussion

I.   <u>Due Process Claims</u>

To prevail on a due process claim regarding the adequacy of the APB's procedures, Wescott must show that he suffered a deprivation of a liberty interest arising directly from the U.S. Constitution or from an expectation or interest created by state law or policy.  See <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005).  It is well-settled that a convicted person has no constitutional right to be conditionally released, on parole or otherwise, before the expiration of a valid sentence.  <u>See Greenholtz v. Inmates of Neb. Penal & Corr. Complex</u>, 442 U.S. 1, 7 (1979).  A valid conviction, with all its procedural safeguards, extinguishes that liberty right.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Meachum v. Fano</u>, 427 U.S. 215, 224 (1976).  A right to parole under the Due Process Clause, therefore, exists only if such right is created by state law.  <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 483-84 (1995); <u>Hamm v. Latessa</u>, 72 F.3d 947, 954-55 (1st

Cir. 1995); <u>Brooker v. Warden</u>, No. 98-466-JD, 1999 WL 813893, at
* 2 (D.N.H. June 22, 1999).

In New Hampshire, a convicted inmate has no State-created
liberty interest in parole.  <u>See</u> <u>Jago v. Van Curen</u>, 454 U.S. 14,
19-21 (1981); <u>Ainsworth v. Risley</u>, 244 F.3d 209, 216-17 (1st Cir.
2001), <u>vacated and remanded on other grounds sub nom. Ainsworth</u>
<u>v. Stanley</u>, 536 U.S. 953 (2002); <u>Knowles v. Warden</u>, 140 N.H. 387,
389, 666 A.2d 972, 974-75 (1995).  "In determining whether state
law provides a protectable liberty interest in parole, federal
courts are bound by the state's interpretation of applicable
state law unless that construction or application violates
federal law."  <u>Brooker</u>, 1999 WL 813893, at * 2.

The applicable New Hampshire parole laws are found in N.H.
Rev. Stat. Ann. ("RSA") § 651-A, which provides that:

> A prisoner <u>may</u> be released on parole upon the
> expiration of the minimum term of his sentence,
> [as adjusted by other statutory provisions],
> provided that there shall appear to the adult
> parole board, after having given the notice
> required in RSA 651-A:11, to be a reasonable
> probability that he will remain at liberty without
> violating the law and will conduct himself as a
> good citizen.  Any prisoner so released shall be
> given a permit by the board to be at liberty from
> prison during the unexpired portion of the maximum
> term of his sentence.

RSA 651-A:6, I (2009) (emphasis added).  Under authority provided

by RSA 651-A:4, III, the parole board has adopted rules

pertaining to parole policy as follows:

> Parole shall be considered a privilege, something
> to be earned rather than automatically given, and
> any release prior to the maximum term shall be
> made only upon careful and lawful consideration.
> An inmate shall not be granted parole unless the
> board finds a reasonable probability that the
> inmate will remain at liberty without violating
> any law and will conduct himself as a good
> citizen, pursuant to criteria in [N.H. Code Admin.
> R.] Par 301.03.

N.H. Code Admin. R. Par ("PAR") 301.02 (2009).

The New Hampshire Supreme Court has repeatedly held that the

parole board has broad discretion in its parole decisions and

that the Board is not mandated to grant parole to an inmate,

although he may meet certain conditions or criteria.  See

Knowles, 140 N.H. at 389, 666 A.2d at 974-75; Cable v. Warden,

140 N.H. 395, 398, 666 A.2d 967, 969 (1995); Baker v. Cunningham,

128 N.H. 374, 381, 513 A.2d 956, 960 (1986).  Simply put, "[t]he

possibility of parole is not a right to liberty conferred by New

Hampshire state law."  Brooker, 1999 WL 813893 at * 4.

Absent a constitutional right to parole, or a liberty

interest in the grant of parole, there can be no constitutional

due process violation for a denial of parole.  See Greenholtz,

442 U.S. at 7; Brooker, 1999 WL 813893 at *4.  Accordingly, a
claim challenging the denial of parole on due process grounds
must be dismissed, as it is not cognizable in a federal habeas
petition.

Wescott claims that the APB did not follow its own
procedures when it: denied his motion to reconsider as premature;
terminated his original parole hearing before making a final
decision; scheduled a rehearing without specific legal
authorization to do so; and failed to provide him with a
transcript or tape recording of his hearing.  As a result,
Wescott claims that the denial of his parole, and thus his
present incarceration, violates his rights under the Due Process
Clause of the Fourteenth Amendment.

Wescott submitted to this Court hundreds of pages of
pleadings, including his petition and attachments thereto.  Much
of Wescott's submissions amount to arguments he has crafted in
the state courts, and now in this Court, asserting violations of
his rights by the process employed by the APB.  Wescott's filings
are, in large part, an attempt to create a legal justification
for his hypertechnical parsing of the language in the state's
administrative regulations that, he presses, should be adopted by

10

this Court and applied to the facts here in such a manner that those regulations create a liberty interest in the plaintiff being granted a favorable parole decision at this time.

I have reviewed and considered all of the information submitted by Wescott in this matter.  I will not reiterate or respond individually to each of Wescott's points and arguments, but will specifically address those upon which Wescott's arguments turn.  I understand that Wescott feels he is beating his head against a judicial wall, and that he feels that the law as it currently stands, and this Court's reliance upon it, is flawed.  Wescott's frustration, however, arises not because he is correct and no one will listen to him, but because his apprehension, construction and analysis of the laws and administrative regulations governing parole procedures in New Hampshire is, simply stated, incorrect, and, as such, the judicial officers and opposing parties with whom he has raised these issues have not acceded to his view of the law.[4]

---

[4]Wescott utilizes a paintball analogy wherein he likens his state court litigation in this matter to a paintball game against the State of New Hampshire where he ends up clean, the State ends up covered in paint, and the State is still declared the winner. To extend his own analogy, it seems to me that Wescott refuses to acknowledge the paint on his own clothing because the colored substance he has been struck with does not meet his definition of "paint," and that the definition he is using is one that he

Wescott's reading of the regulations is strained and narrow, and excludes possibilities that are not excluded by the regulations as written.  For example, PAR 203.08, entitled "Conclusion of the Hearing" states: "After the board members, inmate, and witnesses have concluded their questions and/or comments, board members shall make a decision to grant or deny parole according to the criteria in Par 301.02."  Wescott interprets this provision of the regulations to require the APB, if it does not clearly and finally deny him parole at the time of the end of his hearing, to grant him parole.  This mandate is not in the language of the regulation.  Nothing in the regulation requires that the APB make a decision in the hearing room at the moment the hearing is concluded, only that the decision must take place after the hearing is held.  In this case, Wescott received a hearing on May 8, 2008.  After that hearing, the APB denied his parole, in writing.  On the same document, however, the APB stated its intent to rehear Wescott's parole request.[5]

---

created, and that none of the other players or officials are using or have agreed to adopt.

[5]Wescott actually denies ever actually making a request for parole.  A parole request need not be formal.  The Court finds that Wescott's efforts to obtain parole, particularly at the May 8, 2008 parole hearing, constitute a "request" for parole, even if he did not initiate the process.

12

Wescott filed a motion to reconsider the denial of his parole after his May 8, 2008 hearing.  The motion was filed within the thirty day deadline available to file such a motion. The APB responded that, as it had agreed to rehear the question of whether he should be granted parole, the motion to reconsider was "premature."  From this, Wescott improperly deduces that his parole could not have been denied on May 8, 2008, or his motion to reconsider would have been accepted and not denied as premature, as the regulations give him a right to file a motion to reconsider within thirty days of the APB's decision.  See PAR 211.03 (requiring a motion to reconsider to be filed within thirty days after service of a final APB decision or order). Wescott then concludes that because his motion was deemed premature, and the May 8, 2008 decision could not have been a denial of his parole, that the APB was required to grant him parole at that time, as the APB is without authority to do anything but grant or deny parole under PAR 203.08.

Wescott fails to understand that nothing in PAR 203.08 precludes the APB from postponing a decision, or from reconsidering a denial of parole on its own initiative, which is what actually occurred here.  See Knowles, 140 N.H. 387, 390, 666

13

A.2d 972, 976 (1995) (parole board's broad discretion to deny parole is not limited by its administrative rules).  APB did deny Wescott parole after his May 8, 2008 hearing.  While Wescott claims that the finding that his motion to reconsider was premature negates such a possibility, he is incorrect.  The ruling that the motion to reconsider was "premature," occurred because the APB had already, on its own, agreed to reconsider Wescott's request for parole.  Once reconsidered, if parole is again denied, nothing precludes Wescott from filing an additional motion to reconsider, within thirty days of that decision, objecting to the basis upon which parole was denied a second time.  Wescott's speculative assertion that had he waited to file his motion it would have been deemed untimely will not be credited as fact at this time.

No set of regulations can possibly foresee and regulate every procedural or circumstantial twist and turn the APB will face in considering the advisability of granting parole to the numerous individuals it will see, or the unique facts and circumstances with which the APB will be presented in each case. That said, the law as it exists and as interpreted by the Courts will be applied to those facts and circumstances as they are

14

presented.  I understand that Wescott disagrees with some of the
previous decisions of both this Court and the state courts of New
Hampshire.  He is entitled to his disagreement, and to pursuing
appropriate judicial and legislative remedies to change the law,
if he feels that any law has been enacted or decided improperly.
In the meantime, however, I will apply the law as it presently
exists to the facts in this case in rendering my recommendation
in this matter.

The parole regulations require the parole board to evaluate
an inmate's behavior during his custody when making a parole
determination.  <u>See</u> PAR 301.03 (requiring the APB to consider
certain criteria in rendering a decision); PAR 302.01 (requiring
the APB to deny parole under certain circumstances).  The APB
initially declined Wescott's parole because they wanted
additional information from the director of the sexual offender
treatment program in the prison.  The information they sought was
evaluation criteria, as identified in PAR 301.03, which the APB
is required to consider.  Among other things, PAR 301.03 requires
the APB to consider, in evaluating an inmate's suitability for
parole:

(a) The inmate's personality, maturity, sense of responsibility, and any developments in personality which might promote or hinder the conformity to the law;

. . .

(d) The inmate's criminal record, including the nature and circumstances of criminal activity, and the recency and frequency of previous offenses;

(e) The seriousness of the confining offense or other committed offenses, including the degree of violence or lack of concern for victims involved;

(f) The degree of remorse or empathy for victims and the attitude of the inmate toward his prior criminal conduct;

. . .

(h) The inmate's conduct within the institution, including, but not limited to:

.  .  .

(2) Evidence of self-improvement through the various institutional programs and, specifically programs which addressed problems or issues that contributed to the inmate's prior criminal activity;

(i) <u>Evaluations and recommendations received by the board from the department of corrections</u>, courts, and relevant social service, mental health, and criminal justice agencies; . . .

PAR 301.03 (emphasis added).  The APB was required to consider the PAR 301.03 criteria in fulfilling its obligation to determine whether:

(a) There exists reasonable probability that the individual will not conform to the conditions of parole and/or the laws of the state of New Hampshire;

(b) Continued treatment, mental or psychological care, or vocational or other training within the institution would substantially improve the inmate's capacity to lead a law-abiding life upon release at a future date;

(c) The existence of adverse public concern or notoriety would seriously hinder the inmate's transition to the community;

. . ..

PAR 302.01.  Not only was the APB within its rights to obtain such information prior to granting Wescott parole, it was required to do so by the administrative regulations governing parole procedures.  Id.; PAR 301.03.[6]

---

[6]In a pleading filed in the Merrimack County Superior Court, Wescott stated that it lacked "any legal intelligence" to conclude that the Board was obligated to consider the contents of his website, because the contents were protected from all scrutiny for any reason by the First Amendment.  Wescott is incorrect.  The First Amendment does not immunize all speech from all scrutiny in all circumstances.  See Beard v. Banks, 548 U.S. 521, 528 (2006) (finding that while imprisonment does not automatically deprive prisoner of protections of the First Amendment, the Constitution sometimes permits greater restriction for such rights in prison than it would elsewhere) (citing Turner v. Safley, 482 U.S. 78, 84-85 (1987)); Pell v. Procunier, 417 U.S. 817, 822 (1974) ("[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penologic objectives of the corrections system.").

The fact that the administrative regulations do not specifically set forth a procedure for delaying a decision if additional information is required, does not mean that the delay in Wescott's case violated due process.[7]  To the contrary, it is apparent that the APB provided Wescott with at least two opportunities to be heard in his request for parole, to call witnesses, and to argue that he should be released.  Therefore, I find that Wescott's due process claim does not allege the denial of any protected liberty interest in the parole decision itself or in the procedures utilized by the APB in this matter.

II.  First Amendment Claims

Wescott asserts that his present incarceration is unconstitutional because the denial of his parole violated his First Amendment rights to free speech and to freely exercise his

_____

[7]Wescott was convicted of, and is incarcerated for, child sexual assault.  Frankly, the Court cannot imagine what type of information would be more relevant to the APB's consideration of Wescott's readiness for parole than Wescott's writings about sexual abuse, interpersonal violence, and his efforts to reach out to members of the public to engage in communication on these issues.  Whether or not the website was online at the time of Wescott's parole hearing, or how long ago the website was taken down, is not the issue.  The web content is material Wescott wrote, admittedly with an intent to publish it, shortly before he became eligible for release on parole.  The APB acted well within its discretion, and in fact, acted within its statutory and regulatory mandate, in considering this information as relevant to a decision on parole.

religion.  This claim is premised on Wescott's assertion that the APB denied his parole because of something he had written.  The record, however, does not support that assertion.  Wescott's claim is actually that, had the APB's parole decision been based on the content of his website, that decision would have violated his First Amendment rights, rendering his present incarceration illegal.  The record before the Court demonstrates, however, that when Wescott's parole was denied on May 8, 2008, it was not because of anything he had written.  Instead, Wescott was denied parole because the APB did not have sufficient information regarding Wescott's suitability for parole to make a parole decision at that time.  Since May 8, 2008, Wescott has not been granted parole because he has refused to participate in administrative parole proceedings, and not due to the content of his former website.  Accordingly, Wescott only speculates that his First Amendment rights might one day be impinged should the APB deny him parole on an improper basis.  Such speculation is insufficient to state a claim upon which habeas relief might be granted.

<u>Conclusion</u>

For the foregoing reasons, I recommend that Wescott's petition for a writ of habeas corpus be dismissed in its entirety.  I further recommend that Wescott's motion seeking a change of venue (document no. 2) be denied.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

James R. Muirhead
United States Magistrate Judge

Date:      November 4, 2009

cc:        Richard R. Wescott, pro se

JM:jba

20